**CITY OF COLUMBUS, Appellee,**

v.

**ALESHIRE, Appellant.**

[Cite as *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–104.

Decided June 17, 2010.

Richard C. Pfeiffer Jr., Columbus City Attorney, Lara N. Baker, City Prosecuting Attorney, Melanie R. Tobias, and Orly Ahroni, for appellee.

Jon J. Saia and Eric R. Zeisler, for appellant.

CONNOR, Judge.

{¶ 1} Defendant-appellant, Stephen E. Aleshire, appeals from the judgment of the Franklin County Municipal Court, entered upon a jury verdict convicting appellant of operating a motor vehicle with a prohibited breath-alcohol concentration and operating a motor vehicle while impaired, and upon the court's finding of guilt as to the offense of traveling the wrong way on a one-way street. For the following reasons, we vacate the judgment and remand for resentencing.

{¶ 2} On July 19, 2008, at approximately 1:40 a.m., appellant was observed operating his motorcycle near Sloopy's Bar by two special-duty Columbus police officers, Sergeant Brian Kaylor and Officer Eric Houser. The officers, who were providing security for the bar and its nearby parking lots, had just been advised by a bar employee about a patron in the parking lot who had had too much to drink and was attempting to leave on his motorcycle. Upon witnessing appellant travel the wrong direction on a posted one-way street and also nearly lose control of the motorcycle twice, Kaylor ordered appellant to stop.

{¶ 3} The special-duty officers spoke with appellant and noticed a strong odor of alcohol, as well as slurred speech. They also observed appellant fumble with his wallet in trying to locate his driver's license. Appellant admitted to having had a couple of drinks, but commented that he was fine to drive. Believing appellant was under the influence, the special-duty officers radioed for a patrol car to conduct field sobriety tests to determine whether or not appellant should be arrested.

{¶ 4} Officer Christopher Hogan arrived and spoke to appellant. Hogan detected a strong odor of alcohol and noticed appellant had difficulty standing upright without moving around. Hogan administered the standard field sobriety tests: the one-leg stand, the walk-and-turn, and the horizontal gaze nystagmus tests. Appellant failed all three tests. Appellant was arrested and placed in the rear of the police wagon. While seated in the police wagon, appellant vomited down the front of his shirt and on the floor of the wagon.

{¶ 5} Appellant was then transported to Columbus police headquarters where Hogan gave him a breathalyzer test using the BAC DataMaster. Appellant's test result was .138. As a result, appellant was charged with violating two Columbus City Codes, operating a vehicle with a prohibited alcohol concentration and operating a vehicle under the influence of alcohol.

{¶ 6} Appellant filed a motion to suppress, challenging probable cause for the stop, as well as the admission of the results of the field sobriety tests and the breathalyzer test. A hearing was held on October 20 and 21, 2008. Among other issues, appellant specifically challenged the testimony of Officer Gregory Buck, the interim calibration officer for the BAC DataMaster machines, claiming that

Buck lacked personal knowledge regarding the exact nature of the records once they are transferred from Columbus police headquarters to the municipal building. The trial court took the entire matter under advisement, and following the submission of written closing arguments, the trial court granted appellant's motion to suppress with respect to the results of the horizontal gaze nystagmus test, but denied all other aspects of the motion.

{¶ 7} Several weeks later, the matter proceeded to jury trial on the offenses of operating a motor vehicle with a prohibited breath-alcohol concentration ("OVI per se") and operating a motor vehicle while impaired ("OVI impaired").[1] Appellee, the city of Columbus, introduced the testimony of several police witnesses. During cross-examination of Hogan, counsel for appellant attempted to ask a variety of questions regarding the BAC DataMaster machine. However, the trial court limited counsel's questioning on these matters. Ultimately, the results of the BAC test were admitted into evidence, over the objection of appellant.

{¶ 8} At the conclusion of evidence, appellant objected to the court's jury instructions and instead offered his own proposed instructions, which the court declined to give. Appellant also objected to a statement made by the prosecutor during closing arguments and requested a mistrial, but the trial court overruled the request and gave a clarifying instruction.

{¶ 9} The jury subsequently returned guilty verdicts on both offenses and the trial court also found appellant guilty of traveling the wrong way on a one-way street. Despite appellant's request that the two OVI offenses be merged and that a sentence be imposed on only one offense, the trial court sentenced appellant on both offenses, as well as the one-way violation.[2] On count one, the OVI-impaired offense, appellant received a sentence of 180 days in jail with 176 days suspended and one day of jail-time credit, plus a fine and court costs. On count two, the OVI-per-se offense, appellant's sentence was 180 days in jail with 176 days suspended and four days of jail-time credit, along with one year of community control, a fine, and court costs. In addition, he received a one-year driver's license suspension. This timely appeal now follows.

{¶ 10} Appellant raises the following assignments of error for our review:

I. The trial court erred in admitting the breath test at trial and in limiting Aleshire's counsel's questioning of Officers Hogan and Buck, thereby preventing him from adequately and appropriately challenging the specific breath test results, specific testing procedures, and qualifications of the officers.

---

1. The offense of traveling the wrong way on a one-way street was tried simultaneously to the court.

2. Appellant's sentence for the one-way violation was a $150 fine, plus costs. Neither that sentence nor the court's finding of guilt on that offense is at issue in this appeal.

II. The trial court erred in not suppressing the breath test following the suppression hearing as there was no testimony offered by the state regarding substantial compliance with Ohio Department of Health regulations governing the keeping of records of breath machine results.

III. The trial court erred when it did not declare a mistrial upon the prosecution's statement during its closing argument which attempted to shift the burden of proof to the defendant.

IV. The trial court erred in not including "at the time of operation" in the jury instructions as an essential element of the offense.

V. It was reversible error for the trial court to sentence Aleshire for violations of both Columbus City Code § 2133.01(A)(1)(a) and § 2133.01(A)(1)(d).

■ {¶ 11} As an initial housekeeping matter, we note that the city filed a motion to strike appellant's reply brief, arguing that the reply brief improperly presents a new assignment of error and/or a new argument not previously raised regarding testimonial statements, the confrontation clause, and the case of *Melendez–Diaz v. Massachusetts* (2009), —— U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314. Appellant, on the other hand, contends that his reply merely cites newly released case law to bolster the argument he previously made regarding his right to vigorously cross-examine the police witnesses involving evidence he believed was inadmissible. While we overrule the city's motion to strike, to the extent that the reply raises new arguments, it shall not be considered in our review of this appeal. See *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979; *State ex rel. Grounds v. Hocking Cty. Bd. of Elections*, 117 Ohio St.3d 116, 2008-Ohio-566, 881 N.E.2d 1252.

■ {¶ 12} In his first assignment of error, appellant asserts that the trial court erred in admitting the breath-test results at trial because the city failed to establish an adequate foundation for their admission, claiming Buck and Hogan lacked personal knowledge as to what happened to appellant's breath when it entered the machine or how it was analyzed in the machine. Appellant further argues that it is not enough for the city to stand on the admission of the breath-test results at the suppression hearing. Instead, relying upon *State v. Vega* (1984), 12 Ohio St.3d 185, 12 OBR 251, 465 N.E.2d 1303, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, appellant submits that the city must re-establish admissibility of the test results at the trial. Additionally, appellant asserts that the results of the breath test should have been excluded because there was never any testimony that would "fall in line with *Daubert*" or demonstrate that the principle upon which it is based is sufficiently established in its field.

{¶ 13} In *Vega*, the Supreme Court of Ohio held that in light of R.C. 4511.19, which legislatively provided for the admission of breath tests if analyzed in accordance with the methods approved by the Director of Health, an accused "may not make a general attack upon the reliability and validity of the breath testing instrument." *Vega* at 190, 12 OBR 251, 465 N.E.2d 1303. Since *Vega*, the Supreme Court of Ohio has repeatedly held that " '[t]he admissibility of test results to establish alcoholic concentration under R.C. 4511.19 turns on substantial compliance with ODH regulations.' " *State v. Luke*, 10th Dist. No. 05AP–371, 2006-Ohio-2306, 2006 WL 1280899, ¶ 23, quoting *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32. See also *State v. French* (1995), 72 Ohio St.3d 446, 650 N.E.2d 887.

{¶ 14} As a result of the implementation of R.C. 4511.19, the legislature has given the director of the Ohio Department of Health ("ODH"), rather than the courts, the authority to determine which tests and procedures are generally reliable and therefore admissible in a prosecution. *Luke* at ¶ 22. Therefore, the admissibility of breath-test results turns on the test's substantial compliance with ODH regulations, not compliance with the Constitution. *French* at 451. Challenges to the prosecution's compliance with these regulations must be made in a pretrial motion to suppress or those challenges are considered to be waived. Id.

{¶ 15} In *Luke*, this court found that this action by the legislature "obviates the need for trial courts to determine admissibility based upon reliability of the processes and methods underlying the use of breath testing machines." *Luke* at ¶ 24. We further determined that "because the *Daubert* inquiry involves *only* determinations as to the reliability of the principles and methods upon which a particular scientific test result is based, the legislative mandate recognized in *Vega* forestalls the need for any *Daubert* analysis in cases such as the present one." (Emphasis sic.) Id. Therefore, we reject appellant's contention that the results of the breath test should have been excluded on the grounds that there was no testimony to establish the procedure or device would "fall in line with *Daubert*," as no *Daubert* analysis is required and no testimony from Buck was needed as to how a breath sample is analyzed.

{¶ 16} Appellant further contends that *Vega* stands for the proposition that even if the results of the breath test survived a motion to suppress, the prosecution still must lay the proper foundation for the test to be admitted at trial, and therefore, the city must re-establish the admissibility of the test. Accordingly, appellant asserts that the city failed to lay the proper foundation for the admission of his breath-test result. We disagree.

{¶ 17} At the hearing on the motion to suppress the breath-test result, the parties stipulated that the precalibration and postcalibration instrument checks

on the BAC DataMaster machine were performed in substantial compliance with ODH regulations and that the instrument-check solution was properly refrigerated and also complied with ODH regulations. In addition, Hogan, who administered the test to appellant, testified that the machine was in proper working order when appellant was tested. The trial court then went on to find that the city had substantially complied with ODH regulations, that the machine was in proper working order at the time appellant submitted his sample, and that Hogan was certified to operate the machine and properly observed appellant for 20 minutes prior to administering the test.

{¶ 18} At trial, Hogan testified as to how he had administered the breath test. Prior to actually administering the test to appellant, Hogan received no internal checks that would indicate that the machine was not working properly. He further testified that the result of appellant's breath test was .138 and that that reading was over the legal limit of .08. The BAC ticket printout indicated that the test had been run at 3:09 a.m.

{¶ 19} Based upon the evidence before us in the record, we find that appellant failed to produce evidence demonstrating that the approved testing procedure was not followed, that something went wrong with his test, or that the operator of the test made a mistake, and thus we find that a proper foundation was provided at trial for the admission of appellant's breath-test results.

{¶ 20} Furthermore, we disagree with appellant's contention that, under *Vega*, the city must re-establish the admissibility of the breath test at trial. Our reading of *Vega* under the current application of R.C. 4511.19 does not support this proposition. Moreover, "a ruling on a motion to suppress challenging the admissibility of a BAC test is not a preliminary ruling on an evidentiary matter." *French* at 451, 650 N.E.2d 887. "An important characteristic of a motion to suppress is that finality attaches so that the ruling of the court at the suppression hearing prevails at trial." Id. at 449, 650 N.E.2d 887. See also *State v. Wang,* 5th Dist. No. 2007CAC090048, 2008-Ohio-2144, 2008 WL 1932305, ¶ 11 (an accused must file a motion to suppress in order to contest the admissibility of test results on foundational grounds related to compliance with ODH regulations; failure to do so, or alternatively, failure to succeed on the merits will result in admission of the results without the requirement that the state lay a foundation on these issues).

{¶ 21} Here, the trial court determined that the city had satisfied its burden of demonstrating substantial compliance with the ODH regulations, and therefore, the test results were deemed admissible following the suppression hearing. However, this does not preclude appellant from challenging the test results at trial under the Ohio Rules of Evidence. Appellant can still make

evidentiary objections at trial challenging the competency, admissibility, relevancy, authenticity, and credibility of the tests. *French* at 452, 650 N.E.2d 887; *Luke,* 2006-Ohio-2306, at ¶ 26; *State v. Edwards,* 107 Ohio St.3d 169, 2005-Ohio-6180, 837 N.E.2d 752, ¶ 16.

{¶ 22} Appellant also asserts in his first assignment of error that the trial court erred in refusing to allow appellant's trial counsel to inquire, upon cross-examination of Hogan, as to the operation of the BAC DataMaster machine used to test appellant. Appellant's questioning delved into issues such as the type of air measured by the machine, the amount of air held in the chamber of the machine, and the amount of breath actually tested by the machine. Citing *Vega* and *French,* appellant submits that he is permitted to attack the specific testing procedure and the qualifications of the officer and to challenge the test results under the rules of evidence. Appellant claims that the trial court erred in limiting his questioning, as he presented proper challenges.

{¶ 23} While we agree with appellant's interpretation of the law under *Vega* and *French* as set forth in the preceding paragraph, we disagree with his characterization of the questions he posed to Hogan.

{¶ 24} The accused may not challenge the general accuracy of a legislatively determined testing instrument. However, he may challenge the accuracy of *his* specific test result. *Columbus v. Day* (1985), 24 Ohio App.3d 173, 174, 24 OBR 263, 493 N.E.2d 1002. Thus, the accused may attempt to show that something went wrong with his test and consequently, the result was at variance with what the approved testing procedure should have produced. Id. Additionally, the accused may attack the test results pursuant to the rules of evidence and may also use expert testimony regarding the weight to be given to the evidence. See generally *French* and *Vega.*

{¶ 25} A review of the transcript of the trial proceedings, specifically appellant's closing argument and his cross-examination of Hogan, reveals that in actuality, appellant was attempting to attack the general reliability of the breath machine, rather than attacking his specific test result. The questions leading up to the trial judge's imposition of limitations on counsel's cross-examination revolved around two issues involving the BAC DataMaster machine: (1) its capacity to measure deep lung air, rather than the amount of alcohol in an individual's stream of breath and (2) the inconsistency between the capacity of the chamber to hold 50 cc's of air, which was thereby converted into .05 liters, and the ticket print-out reading, which measured appellant's breath as one gram of alcohol per 210 liters of breath. As argued by appellee, these questions were designed to imply that the BAC DataMaster machine could not accurately measure an individual's breath-alcohol content.

{¶ 26} For example, the following partial exchange took place just prior to the court's exchange with counsel outside the presence of the jury, during which the trial judge limited appellant's cross-examination:

Q. [Appellant's counsel] * * * The machine is incapable of measuring the amount of alcohol in Mr. Aleshire's entire stream of breath. It's only capable of measuring this alveolar air, or the deep lung air, correct?

A. [Officer Hogan] Correct.

* * *

Q. The chamber, how many cc's of air does that hold?

A. I believe 50.

Q. Fifty. Now, there is—that would be one-twentieth of a liter; is that correct, 50 cc's?

A. I don't know.

* * *

Q. Now, the ticket that the machine printed out for Mr. Aleshire's breath indicates that it's a gram of alcohol per 210 liters of breath; is that correct?

A. Yes.

Q. But yet the machine only holds .05 liters of breath, correct?

A. If you say.

{¶ 27} While the trial court seemed to acknowledge appellant's right to attack the test using the rules of evidence, the court refused to allow appellant's counsel to do so through a witness who was not an expert on such matters and who lacked knowledge of the inner workings of the BAC DataMaster machine. Based upon the above excerpt, as well as other portions of the transcript not cited herein, it is evident that appellant was not attacking his specific test result, but was instead making a general attack on the procedure. Therefore, the trial court did not abuse its discretion, and thus did not act unreasonably or arbitrarily, in imposing limitations or in refusing to allow appellant to attack the general reliability of the breath-testing machine, in contravention of *Vega*. Furthermore, as noted by appellee, while *French* permits evidentiary objections to the test results challenging issues such as competency, admissibility, relevancy, authenticity, and credibility, it does not indicate that a challenge to the "general reliability" is among the permissible challenges.

{¶ 28} Accordingly, appellant's first assignment of error is overruled.

{¶ 29} In his second assignment of error, appellant contends that the trial court erred in denying his motion to suppress because the city failed to demonstrate substantial compliance with respect to the ODH regulations requiring that records of breath-machine-testing results be maintained for three years.

Appellant cites Ohio Adm.Code 3701–53–01, which states that the results of the breath tests "shall be retained for not less than three years." Because Buck testified that he was responsible for the records only while they were stored at Columbus police headquarters during the initial 30 days following testing and prior to their transfer to the municipal building, appellant alleges that the city failed to establish substantial compliance with the three-year-retention requirement.

{¶ 30} Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact, and therefore is in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. As a result, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. Then, the appellate court must independently determine whether the facts satisfy the applicable legal standard, pursuant to a de novo review and without giving deference to the conclusion of the trial court. Id.

{¶ 31} When the accused challenges the results of a breath test in a pretrial motion to suppress, the prosecution has the burden of demonstrating that the test was administered in substantial compliance with ODH regulations. *Columbus v. Morrison*, 10th Dist. No. 08AP–311, 2008-Ohio-5257, 2008 WL 4518218, citing *Burnside* at ¶ 24. If the prosecution establishes substantial compliance, then the burden shifts to the accused to demonstrate that he was prejudiced by anything less than strict compliance. *Morrison* at ¶ 8; *Burnside* at ¶ 24.

{¶ 32} The nature of the prosecution's burden to establish substantial compliance is determined by the degree of specificity with which the accused challenges the legality of the test. *Morrison* at ¶ 9, citing *State v. Johnson* (2000), 137 Ohio App.3d 847, 851, 739 N.E.2d 1249. When a motion to suppress raises only general claims, the burden imposed upon the city is general and slight. *Morrison* at ¶ 9; *Johnson* at 851, 739 N.E.2d 1249. If the motion to suppress is general, the prosecution is required to demonstrate, in general terms, only that it substantially complied with the regulations. Unless the accused raises a specific issue in his motion to suppress, specific evidence is not required. *Morrison* at ¶ 9.

{¶ 33} As part of a one and one-half page laundry list of challenges alleging a lack of substantial compliance with the regulations for alcohol testing, appellant alleged "the State has failed to retain all test results from the instrument in questions for a period of not less than three years as required by OAC 3701–53–

01(A)." However, the motion did not raise specific factual issues of noncompliance with regard to this. Consequently, the trial court found that the city had satisfied its burden of proving substantial compliance with ODH regulations with respect to the records-retention requirement, and therefore, appellant's motion to suppress on that ground was denied.

{¶ 34} Appellant submits that because Buck testified that he had not personally observed three years' worth of records at the municipal building, he lacked personal knowledge as to the completeness of those records, meaning that the city failed to meet the substantial-compliance requirement, the test results were inadmissible, and the trial court erred in failing to grant his motion to suppress. We disagree.

{¶ 35} The city's burden to establish substantial compliance was slight and required it only to generally prove substantial compliance. Buck testified as to the procedure employed by the Columbus police department, which included retaining all of the necessary records for at least three years and perhaps even longer. He testified that he personally maintained the calibration records for the machine in question from late March 2008 until late August 2008. He further testified that each month, another Columbus police officer would take the records from Columbus police headquarters to the municipal building for storage for at least three years. Thus, we find that the city met its burden of demonstrating substantial compliance.

{¶ 36} While Buck admitted that it was possible that some of the testing records could have been lost or destroyed, appellant offered nothing more in support of his claim than the mere suggestion that some of the records had *possibly* not been retained. Appellant did not allege that specific records or groups of records were missing, incomplete, or inaccurate based upon his own inspection of the records, which were available for his inspection through the discovery process. Instead, appellant merely speculated that it was possible that some of the records had not been properly retained. In addition, appellant failed to demonstrate any prejudice. This does not defeat the city's general showing of substantial compliance under its slight burden. See *Morrison* (defendant's hypothetical arguments about unknown persons possibly performing tests without recording them does not negate prosecution's general evidence showing substantial compliance with recordkeeping regulations, and defendant failed to demonstrate prejudice from anything less than strict compliance); *State v. Isbell,* 3d Dist. No. 17–18–08, 2008-Ohio-6753, 2008 WL 5330464 (trooper testified that the most recent 100 tests were kept at the site of the machine, while all further records were kept at a separate location; court found substantial compliance with the three-year-record-retention regulation); *State v. Chrzanowski,* 180 Ohio App.3d 324, 2008-Ohio-6993, 905 N.E.2d 266 (trooper could not testify from

personal knowledge that calibration solution was refrigerated, because he did not actually see it placed in the refrigerator; defendant argued breathalyzer results should be suppressed because there was no evidence to prove compliance with the refrigeration requirement; court found that because the trooper testified the solution is always stored in a special refrigerator, which is always in operation, and there was no evidence of a mechanical problem, the prosecution had met its burden of substantial compliance and the burden shifted to defendant to show he was prejudiced).

{¶ 37} Based upon the foregoing, appellant's second assignment of error is overruled.

{¶ 38} In his third assignment of error, appellant alleges that the prosecution attempted to shift the burden of proof based upon certain remarks made during her closing argument and the trial court erred in failing to declare a mistrial. We disagree.

{¶ 39} It is axiomatic that in a criminal prosecution, the prosecution bears the burden of proof in demonstrating that the accused is guilty beyond a reasonable doubt. See R.C. 2901.05(A). The prosecution may not shift to the accused the burden of proof on an essential element of the crime. See generally *In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368; *State v. Burgess* (Apr. 10, 1984), 10th Dist. No. 83AP–635.

{¶ 40} The remark upon which appellant bases this assignment of error is as follows: "While it's true that we do have the burden of proof, defendant has the right to present any evidence he wants." Immediately following this remark, appellant voiced an objection and requested a mistrial, which the trial court denied. Appellant submits that with this comment, the prosecution improperly attempted to shift the burden of proof to the defendant. The remarks immediately prior to this statement were:

> So it's true—I mean, we talked about in the beginning, in voir dire, about the difference between the real world and maybe the CSI world, or things like that, and it's true that we have no fancy doctors to come in here and explain the breath test machine to you; but what we do have is testimony from one officer that says that he administered that test on a machine that has been approved by the Ohio Department of Health to test someone's blood alcohol content and that he administered that test in accordance with his training, and we have presented evidence that the test was working accurately, and there's been no other evidence.

{¶ 41} "[T]he conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial." *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15 OBR 379, 473 N.E.2d 768.

"The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 470 N.E.2d 883. A defendant is entitled to a new trial only when a prosecutor makes improper remarks and those remarks substantially prejudice the defendant. Id.

{¶ 42} The standard of review in evaluating a trial judge's decision to grant or deny a mistrial is abuse of discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 31 OBR 375, 510 N.E.2d 343. Absent a showing of an abuse of that discretion that results in material prejudice to the defense, this court will not disturb the trial court's determination. *State v. Long* (1978), 53 Ohio St.2d 91, 98, 7 O.O.3d 178, 372 N.E.2d 804. Mistrials need be declared only when justice so requires and a fair trial is no longer possible. *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1. In analyzing whether a defendant was deprived of a fair trial, an appellate court must determine whether, absent the improper remarks, the jury would have found the appellant guilty beyond a reasonable doubt. *Maurer* at 267, 15 OBR 379, 473 N.E.2d 768. To determine if the alleged misconduct resulted in prejudice, we must consider " '(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant.' " *State v. Tyler*, 10th Dist. No. 05AP–989, 2006-Ohio-6896, 2006 WL 3775876, ¶ 20, quoting *State v. Braxton* (1995), 102 Ohio App.3d 28, 41, 656 N.E.2d 970, discretionary appeal not allowed.

{¶ 43} In addition, the prosecutor's conduct must be considered in the context of the entire trial. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, citing *State v. Keenan* (1993), 66 Ohio St.3d 402, 410, 613 N.E.2d 203. The touchstone of this analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, rather than the culpability of the prosecutor. *Smith v. Phillips* (1982), 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78, syllabus. Furthermore, the trial judge is in the best position to determine whether the circumstances of the case necessitate the declaration of a mistrial or whether other corrective actions are sufficient. *State v. Hayes*, 10th Dist. No. 06AP–290, 2007-Ohio-3056, 2007 WL 1748144, ¶ 47, citing *Quellos v. Quellos* (1994), 96 Ohio App.3d 31, 41, 643 N.E.2d 1173.

{¶ 44} While the prosecution cannot shift the burden of proof to the accused, such a prohibition does not prevent the prosecution from commenting on the failure of the accused or his counsel to offer any evidence in support of the purported theory of his case. *State v. Collins* (2000), 89 Ohio St.3d 524, 528, 733 N.E.2d 1118. It is long-standing precedent that the prosecution may comment

upon an accused's failure to offer evidence in support of his case. Id. at 527; *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 193, 616 N.E.2d 909; *State v. Williams* (1986), 23 Ohio St.3d 16, 20, 23 OBR 13, 490 N.E.2d 906; *State v. Champion* (1924), 109 Ohio St. 281, 289–290, 142 N.E. 141. Such comments do not imply that the prosecution has shifted the burden of proof to the defense. *Collins* at 527.

{¶ 45} In the instant case, it is apparent that the city was commenting upon the relative strength of its case and pointing out that appellant had failed to present evidence to rebut the city's evidence or to support his proffered theory that the breath-test result was inaccurate. The remark was made during the prosecution's rebuttal closing in response to appellant's repeated arguments that the city had failed to present evidence to prove that the BAC DataMaster machine could accurately test a person's blood-alcohol content. The city clearly acknowledged that it had the burden of proof and its comments did not attempt to shift the burden of proof to appellant.

{¶ 46} Furthermore, even if the remark was improper, it did not prejudicially affect the substantial rights of appellant, as the trial court promptly gave the following curative instruction:

THE COURT: Okay. Before we go any further, please be advised and remember that the defendant has no burden of proof here whatsoever. Defendant doesn't have to take the stand, doesn't have to present any evidence. The evidence is—The burden of proof in this case is on the prosecution to prove beyond a reasonable doubt, which I'll explain to you later what that is, the elements of the crime of the offense. So you have that straight now. All right.

{¶ 47} Given this instruction, along with the presumption that juries obey instructions from the court, appellant's substantial rights were not prejudicially affected here, even if we assume, arguendo, that the remarks were improper. See *State v. Fox* (1938), 133 Ohio St. 154, 160, 10 O.O. 218, 12 N.E.2d 413; *Pang v. Minch* (1990), 53 Ohio St.3d 186, 195, 559 N.E.2d 1313. Moreover, there was overwhelming evidence presented here, including testimony as to appellant's unstable driving, his slurred speech, his admission that he had a couple of drinks, his failure of two field tests, his act of vomiting upon himself in the police wagon, and his breath-test results of .138.

{¶ 48} Accordingly, we overrule appellant's third assignment of error.

{¶ 49} In his fourth assignment of error, appellant asserts that the trial court erred by not including the words "at the time of operation" in the jury instructions, despite appellant's specific request that the language be used. Appellant argues that the trial court was required to inform the jury that the city must prove the appellant's level of alcohol "at the time of operation" of the

motorcycle in the OVI-per-se offense. Appellant argues that that phrase is an essential element of the offense of driving with a prohibited breath-alcohol concentration and that by failing to include it, the court committed reversible error because it failed to adequately inform the jury of the law.

{¶ 50} Appellant further argues that the phrase "at the time of operation" is an essential element because there is nothing within the OVI-per-se statute or code that indicates that a chemical test taken within the three-hour time period after the accused operated the vehicle is presumed to be conclusive proof of guilt at the time of operation of the vehicle, or that the results of the test "relate back" and equate to the level of alcohol in appellant's breath at the time he was operating the vehicle, which was potentially a couple of hours earlier. As a result, appellant argues, the alcohol level at the time of operation of the vehicle, rather than the alcohol level at the time the test was taken, is controlling.

{¶ 51} Trial courts have the responsibility to give all jury instructions that are relevant and necessary in order for the jury to properly weigh the evidence and perform its duty as the fact-finder. *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, paragraph two of the syllabus; *State v. Moody* (Mar. 13, 2001), 10th Dist. No. 98AP–1371, 2001 WL 242547; *State v. Conway,* 10th Dist. No. 03AP–585, 2004-Ohio-1222, 2004 WL 504350. An instruction is proper when it adequately informs the jury of the law. *Conway* at ¶ 24; *Linden v. Bates Truck Lines, Inc.* (1982), 4 Ohio App.3d 178, 4 OBR 280, 446 N.E.2d 1139. However, the trial court is not required to give requested instructions verbatim, as long as the instructions given contain a correct statement of the law and are appropriate to the facts of the case. *State v. Lessin* (1993), 67 Ohio St.3d 487, 620 N.E.2d 72; see also *Moody*.

{¶ 52} When we review a court's refusal to give a requested instruction, we must determine whether the trial court's decision constituted an abuse of discretion under the facts and circumstances of the case. *State v. Smith* (Apr. 2, 2002), 10th Dist. No. 01AP–848, 2002 WL 484927, citing *State v. Wolons* (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443. An appellate court will not reverse a conviction in a criminal case due to jury instructions unless it finds that the jury instructions amount to prejudicial error. *Moody,* citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph two of the syllabus. When reviewing a specific challenged instruction on appeal, the instruction should not be judged in isolation, but instead, within the context of the overall charge. *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the syllabus.

{¶ 53} Here, appellant submits that the trial court erred in failing to instruct the jury that the accused must have a prohibited breath-alcohol content "at the time of operation." We disagree.

{¶ 54} In *State v. Fisher*, 1st Dist. No. C–080497, 2009-Ohio-2258, 2009 WL 1360861, the defendant argued that the trial court failed to properly instruct the jury because it failed to inform the jury that the defendant had to have the required prohibited breath-alcohol content "at the time of operation." However, the First District Court of Appeals rejected this argument. The trial court had instructed the jury that in order to find Fisher guilty, it had to find that he had operated the vehicle on the day in question with a prohibited breath-alcohol content. As a result of this instruction, the appellate court found that the trial court had instructed the jury on all the statutory elements of driving with a prohibited breath-alcohol content. Because Fisher was not prejudiced by any omission, the court affirmed Fisher's conviction.

{¶ 55} Additionally, in *State v. Adams*, 3d Dist. No. 3–06–24, 2007-Ohio-4932, 2007 WL 2757441, the Third District Court of Appeals reached a similar result. In *Adams*, the defendant submitted a proposed jury instruction that read as follows: "[O]n or about October 11th, 2005 in Crawford County, Ohio the defendant did operate a vehicle and while—and at the time of operation was under the influence of alcohol." Id. at ¶ 28. However, the trial court declined to give the proposed instruction. The instruction given by the court did not include the "at the time of operation" language. On review, the court of appeals determined that the instruction, along with the instructions as a whole, clearly and fairly expressed the law, and therefore, did not prejudice Adams. Thus, the court declined to reverse the conviction.

{¶ 56} In the instant case, we find *Adams* and *Fisher* to be persuasive. While the jury instruction given by the trial court was not exactly the same as the instruction requested by appellant, the trial court is not required to give instructions in the exact language requested by the defendant. See *State v. Madrigal* (2000), 87 Ohio St.3d 378, 394, 721 N.E.2d 52. Here, the instruction given covers the elements of the offense by properly informing the jury that before it could find appellant guilty of operating a motor vehicle with a prohibited breath-alcohol concentration, they must be convinced beyond a reasonable doubt that appellant was operating a motor vehicle and that he had a concentration of .08 percent or more by weight of alcohol per 210 liters of his breath. When considering the charge as a whole, this clearly and fairly expresses the law and does not prejudice appellant.

{¶ 57} Furthermore, we note that Columbus City Code 2133.01(D)(1) states: "In any criminal prosecution * * * for a violation of division (A) or (B) of this section, the court may admit evidence on the concentration of alcohol * * * in the

defendant's * * * breath * * * at the time of the alleged violation *as shown by chemical analysis of the substance withdrawn within three (3) hours of the time of the alleged violation.*" (Emphasis added.)

{¶ 58} Based upon this language, and in the absence of any authority presented by appellant to the contrary, it is apparent that a breath sample acquired within three hours of the time of the violation constitutes the level of alcohol at the time of operation. Accordingly, we overrule appellant's fourth assignment of error.

{¶ 59} In his fifth and final assignment of error, appellant asserts that the trial court erred in sentencing him on both the OVI-per-se and the OVI-impaired violations, as these two offenses arose from the same conduct and were allied offenses of similar import. Appellant cites R.C. 2942.25(A) in support of his position. He further argues that his sentences and convictions should be vacated as a result of this error.

{¶ 60} R.C. 2941.25(A) provides: "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

{¶ 61} The city concedes that the trial court erred in sentencing appellant for violations of both Columbus City Code 2133.01(A)(1)(a) (OVI impaired) and Columbus City Code 2133.01(A)(1)(d) (OVI per se), and cites Columbus City Code 2133.01(C).[3]

{¶ 62} Columbus City Code 2133.01(C) provides:

In any proceeding arising out of one (1) incident, a person may be charged with a violation of division (A)(1) and a violation of division (B)(1), (2), or (3) of this section, but the person may not be convicted of more than one (1) violation of these divisions.

{¶ 63} Here, appellant's sentences are clearly contrary to law. The two charges should have been merged for purposes of sentencing and appellant should have been sentenced on one of the two charges, as elected by the prosecution. See *N. Olmsted v. Benning* (Apr. 4, 2002), 8th Dist. No. 79548, 2002 WL 501693; *Columbus v. Ziegler* (Mar. 3, 1992), 10th Dist. No. 91AP–1058, 1992 WL 42820.

{¶ 64} Accordingly, we sustain appellant's fifth assignment of error. We remand this matter for resentencing so that the prosecution can elect one of the two OVI offenses upon which appellant shall be sentenced.

---

**3.** Columbus City Code 2133.01 is the municipal equivalent of R.C. 4511.19, and both codes address the criminal offense of operating a vehicle while under the influence of alcohol and/or drugs.

{¶ 65} In conclusion, we overrule appellant's first, second, third, and fourth assignments of error and sustain appellant's fifth assignment of error. The judgment of the Franklin County Municipal Court is vacated, and this matter is remanded to that court for resentencing, consistent with this decision.

Judgment vacated
and cause remanded.

TYACK, P.J., and FRENCH, J., concur.

